658 So.2d 774 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Fred L. REED, Jr., Defendant-Appellant.
Nos. 26896-CA, 26897-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 1995.
Samuel Thomas, Tallulah, for appellant.
James D. Caldwell, Dist. Atty., by Vicki V. Baker, Asst. Dist. Atty., Tallulah, for appellee.
Before SEXTON, LINDSAY and STEWART, JJ.
*775 SEXTON, Judge.
Fred Reed, Jr. appeals consolidated judgments denying his request for reduction in child support payments. We affirm.
Fred L. Reed, Jr. (hereinafter "Reed") is a physician in Lake Providence, Louisiana. On May 29, 1991, Reed was ordered to pay $2,400 per month child support for the six children born of the marriage between him and Mary Ann Chase Reed Russell (hereinafter "Russell"), as a result of a divorce between the parties. He was also ordered to pay $1,000 per month in alimony and an additional $300 per month for child care expenses as long as Mary Ann Chase Reed Russell continued in school. Further, Reed was ordered to maintain health insurance and pay college tuition for the minor children until they reached the age of majority. Reed accepted all community property indebtedness.
On August 20, 1992, Vivian Allen (hereinafter "Allen") filed a petition to establish paternity on behalf of her son, Fred Reed, III, and for child support. Paternity was established, and Reed was ordered to pay $549 child support on January 12, 1993.
Reed has remarried and one child was born of this union. He also supports the three children of his present wife.
Through the office of support enforcement, both Russell and Allen sought arrearages from Reed. Because one of the children born of the marriage between Russell and Reed had reached the age of majority, the petition claimed arrearages for only five of the children born of the marriage. On August 10, 1993, the asserted arrearages were made executory.
On this same day, Reed filed a rule to decrease his child support payments in both cases. His petition included allegations that he had filed bankruptcy on November 4, 1991, and that as a result of his reorganization, he was ordered to pay $8,000 per month to the bankruptcy court. Further, he asserted that as a result of overpayment by Medicaid and Medicare, he was obligated to pay $7,000 per month to the Louisiana Department of Health and Hospitals. He claimed also to only receive the salary of $5,000 per month from his newly incorporated business, which he claimed should be the amount used to calculate his income. Reed also contended that both Russell and Allen were voluntarily unemployed and, therefore, the child support obligation should be calculated based upon a determination of the income earning potential of each.
On August 31, 1993, the two cases were consolidated and heard. A judgment denying Reed's requests for decrease was rendered on April 5, 1994. The trial court determined that the bankruptcy and corresponding payments were not a change in circumstances sufficient to warrant a reduction in Reed's child support payments. The court did determine that because one of Reed's children reached the age of majority, Reed's remarriage, and the birth of two children since his divorce did constitute a change in circumstances sufficient to inquire into the request for reduction. Upon this inquiry, the court determined that Reed's income for the purpose of the child support calculation was $11,000 per month, the amount admitted to by Reed at the 1993 hearing to establish support for Fred Reed, III. After utilizing the child support guidelines, the court found that a reduction was not warranted.
Reed appeals the denial of the request for decrease in child support urging that the trial court erred in failing to find a change in circumstances sufficient to warrant a reduction in the support obligation. Specifically, he claims that the trial court erred in the calculation of his income which, he argues, should exclude amounts paid to the bankruptcy court and the state of Louisiana, as these are necessary expenses. Reed thus contends that $5,000 is the correct calculation of his monthly income. He further argues that he should be given a credit for medical and health insurance, which he pays for the children in the amount of $501. Finally, Reed argues that the trial court erred in failing to find both Chase and Allen voluntarily underemployed.

DISCUSSION
LSA-R.S. 9:311 provides for the reduction or increase in child support and states in part:

*776 A. An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
Even as to consent decrees, a child support obligation must be justified by a substantial change in circumstances. Crowder v. Crowder, 595 So.2d 810 (La.App.2d Cir.1992), writ denied, 598 So.2d 358 (La. 1992).
Once the obligor proves a change in circumstances, entitlement to a reduction is presumed and the burden shifts to the party opposing reduction to overcome that presumption. Preis v. Preis, 93-569 (La.App. 3d Cir.1994) 631 So.2d 1349.
Proof of change in circumstances does not justify a reduction in child support award where obligor's inability to pay arises from his own voluntary actions. McHale v. McHale, 612 So.2d 969 (La.App.2d Cir.1993).

BANKRUPTCY AND MEDICARE PAYMENTS AS CHANGE IN CIRCUMSTANCES
Reed first argues that the trial court erred in failing to find that the monthly payments of $8000 and $7000-$7500 owed by Reed as a result of his bankruptcy and Medicare overpayment were a change in circumstances sufficient to warrant reduction of the child support obligation.
The court reasoned that between 1989 and the date of his divorce in 1991, Reed had incurred a one-half million dollar debt as the result of poor business management and an extravagant lifestyle. Reed admitted at the trial of this matter that the bankruptcy was the result of his poor business savvy and bad management practices. Further, the court found that the amounts owing to the state of Louisiana for Medicare overpayment were the result of Reed's actions in overcharging the state. We find no abuse of discretion in this finding by the trial court.
Louisiana jurisprudence is well settled that even upon a showing of change in circumstances, a reduction is not warranted where an obligor's inability to pay arises from his own voluntary actions. McHale, supra. The jurisprudence is likewise clear that a parent and spouse will not be relieved of his or her obligation to support children because of an unstable financial condition brought about by the obligor's own neglect or mismanagement. Boudreaux v. Boudreaux, 460 So.2d 703 (La.App. 3d Cir.1984); Moore v. Moore, 380 So.2d 180 (La.App.2d Cir. 1980).
In Moore v. Moore, supra, the mother sought to garnish the wages of the defendant father as she had for the third time in six years. The trial court, on reconventional demand of the father, upheld the garnishment, but suspended the father's obligation to pay the accruing child support until the past due child support was satisfied. The mother appealed, contending that the father's financial dilemma was shown to result solely from his own neglect and mismanagement. In Moore, the parties were divorced and the father was ordered to pay child support. When he did not fully meet his support obligation, an executory judgment was rendered against him with a garnishment of his wages following. Two additional executory judgments followed, each corresponding to a garnishment. The father did not voluntarily pay his support obligation at any time after it was rendered. Further, the father's wages were also subject to garnishments from two judgment creditors. The father sought and was discharged in bankruptcy. He was also subject to a prior court order of support for a child of a previous marriage. During the proceedings, the father began to live with his girl-friend who was pregnant by him. In refusing to uphold the trial court suspension of child support until past due amounts were paid, this court noted:
The father's financial plight arises only from his neglect and his failure to meet his obligations. He has not shown that any fortuitous event or circumstance beyond his control brought about a change in his ability to pay the child support....
The support obligation imposed on the father and the mother of minor children by *777 CC Art. 227 is firmly entrenched in our law and is a matter of public policy. Neither equity (CC Art. 21) nor practical inability to pay (CC Art. 232) overrides this policy or allows a parent to avoid paying his or her share of the obligation where the inability arises solely from that parent's own neglect and failure....
In the absence of a fortuitous change in circumstances authorizing a reduction in child support, a parent even in financial straits, is obligated to support the legitimate needs of his or her children during their minority.
Moore v. Moore, supra at 182.
In Boudreaux v. Boudreaux, supra, the father sought a reduction in child support claiming financial woes occasioned by his failure to pay the Internal Revenue Service and his desire to open a new business in another location. The father contended that he was unable to pay both his support and the IRS at the same time. The trial court granted the reduction which was reversed on appeal. Third Circuit Court of Appeal noted:
Robert's newest expenses have been incurred as a result of a business judgment which he made, despite the fact that he has numerous existing debts to extinguish.... While we sympathize with Mr. Boudreaux's position, the courts cannot act as his financial counselors and provide "breathing room" when he finds himself "between a rock and a hard place" brought about by his own poor fiscal management.
Boudreaux v. Boudreaux, supra at 705.
The facts of this case are similar to both Moore and Boudreaux and the same reasoning applied by those courts applies here. The financial condition of Reed has been caused, by his own admission, from poor business decisions and judgment. While his situation is unfortunate and difficult, it was nonetheless brought about by Reed himself. As this court noted in Moore, the support obligation is firmly entrenched in the law and public policy. Neither the practical inability to pay or equity overrides this policy. Reed's bankruptcy and Medicare payments therefore do not warrant a reduction in his child support obligation.

CALCULATION OF INCOME
Next, Reed argues error in the trial court failure to consider the sum of $5000 as his income for the purpose of calculation of both child support obligations. Rather, the court considered the sum of $11,000 as the appropriate calculation of Reed's monthly income for all of the children including Fred Reed, III. We find no error in this finding.
LSA-R.S. 9:315(4)(c) defines "gross income" as gross receipts minus ordinary and necessary expenses required to product income, for purposes of income from self-employment. "Ordinary and necessary expenses" shall not include any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
The child support guidelines are based upon gross income figures. Zatzkis v. Zatzkis, 632 So.2d 307 (La.App. 4th Cir. 1993), writ denied, 640 So.2d 1341 (La.1994).
In arriving at the figure to be used in the calculation of child support of Fred Reed, III, the court took judicial notice of the January 12, 1993, hearing which set the child support for Fred Reed, III. In these proceedings, Reed stipulated to an $11,000 monthly salary. The court found no change in circumstances since that time.
A court can take judicial notice of its own proceedings in the same action. LaForge v. LaForge, 26,317 (La.App.2d Cir. 1995) 649 So.2d 151; Fontana v. Fontana, 426 So.2d 351 (La.App.2d Cir.1983), writ denied, 433 So.2d 150 (La.1983); Lee v. East Baton Rouge Parish School Board, 623 So.2d 150 (La.App. 1st Cir.1993), writ denied, 627 So.2d 658 (La.1993); Chrysler Credit Corporation v. Henry, 221 So.2d 529 (La.App. 4th Cir.1969). Because no transcript of the January 12, 1993, hearing is available, we have supplemented this record with the minutes and the judgment rendered by the court in that hearing.
The record reveals that the income statements submitted by Reed indicate fluctuating income every month. This information indicates an average, however, of $51,704 per month from the months of April through July *778 of 1993, in accord with the trial court calculation. The business expenses reported by Reed likewise fluctuate monthly. The trial court determined that those expenses labeled "patient transport fees" and "management fees" were questionable and did "not stand up under close scrutiny." It therefore excluded those amounts from the expense deduction. We cannot find that the trial court exclusion of these expenses is clearly wrong. See Mayo v. Crazovich, 621 So.2d 120 (La. App.2d Cir.1993).
After exclusion of these expenses from the monthly expense amounts reported by Reed, the average monthly expense submitted for the months April through July of 1993 equals $37,978 per month. Based upon these income and expense figures, therefore, the trial court's calculation of Reed's monthly income does not appear to be in error.

MEDICAL INSURANCE
Reed argues in brief that the trial court erred in failing to give Reed credit for the $501 paid per month for medical and health insurance paid by Reed on behalf of the minor children.
Pursuant to the provisions of LSA-R.S. 9:315(5) "health insurance premiums" means the actual amount paid by a party for providing health insurance on behalf of the child. It does not include any amount paid for coverage of any other persons.
In this case, Reed admitted that the $501.66 dollars that he paid per month for health insurance covers Reed, his present wife, and all of his children except Fred Reed, III. Pursuant to the provisions of LSA-R.S. 9:315(5), Reed is not entitled to a credit for the entire amount of the premiums paid. Because there is no evidence before us which demonstrates a break-down of the amounts paid to the insurance company for Reed, his present wife, or his four children of this marriage, Reed has failed to demonstrate his entitlement to the claimed credit.

UNDEREMPLOYMENT OF RUSSELL AND ALLEN
Reed finally argues that both Russell and Allen are voluntarily underemployed or underemployed for the purposes of LSA-R.S. 9:315.9 and that, therefore, their income earning potential should have been considered by the trial court. The trial court determined that Reed had failed to demonstrate that either were underemployed for the purposes of this statute. We find no error in this ruling.
Relevant to Allen, the record reveals that Fred Reed, III, born on March 14, 1991, was only two years old at the time of this August 31, 1993, hearing to decrease child support.
LSA-R.S. 9:315.9 provides in part:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years....
(Emphasis ours.)
Because Fred Reed, III, was only three at the time of the hearing, the mandatory language of LSA-R.S. 9:315.9 requiring the use of income earning potential is inapplicable. Settle v. Settle 25,643 (La.App. 2d Cir.1994) 635 So.2d 456, writ denied, 94-1340 (La.1994) 642 So.2d 194.
Like Allen, Russell was caring for four-year-old Tabitha (born February 20, 1989) at the time of the August 31, 1993, hearing. Therefore, Russell, like Allen, was caring for a child under the age of five. Her income earning potential was appropriately not considered by the trial court.

CONCLUSION
For the foregoing reasons, the district court judgment of April 5, 1994, denying the rule to decrease is affirmed. Costs of this appeal are assessed to Fred Reed.
AFFIRMED.