728 So.2d 1058 (1999)
Karen L. BROWN, Applicant,
v.
Daryl TAYLOR, Defendant.
No. 31,352-KW.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1999.
*1059 Allan R. Harris, Shreveport, Counsel for Applicant.
Patricia Gilley, Shreveport, Counsel for Defendant.
Before CARAWAY and HIGHTOWER, J. Ad Hoc, and PRICE, J. Pro Tem.
CARAWAY, J.
Because of her violation of an order for child support, the trial court found the delinquent parent in contempt of court and sentenced her to a term of imprisonment which would require at least eighteen days in jail. Additionally, the trial court suspended the parent's driver's license pursuant to La. R.S. 9:315.30. Contesting these actions of the trial court, the parent seeks a supervisory writ which we grant to reverse the trial court's improper imposition of the determinate criminal sentence in this civil contempt proceeding. While affirming the other rulings of the trial court, we remand the case for the imposition of a constitutionally permissible sentence for civil contempt.

Facts and Procedural History
Though they never married, Karen Brown Strain ("Karen") and Daryl Taylor ("Daryl") are the parents of two children. Karen and Daryl physically separated and in 1993 Daryl became domiciliary parent of the children. By agreement of the parties, Karen did not pay child support for a period of about three years. Approximately four years later, in 1997, Daryl filed a petition seeking sole custody of the children and child support from Karen. In May 1997, a consent judgment, retroactive to January of 1997, was entered into between the parties whereby Karen, without the aid of counsel, agreed to pay Daryl $350 per month in child support.
In November 1997, Daryl filed a rule for past due child support and a request that Karen be held in contempt of court for her failure to pay child support for the months of May through November in the amount of $2,305. Karen was served with a copy of the petition which set the hearing on the Rule to Show Cause for February 4, 1998. Upon Karen's absence from the hearing on February 4, the trial court invoked its contempt *1060 power, issued a bench warrant for her arrest, and continued further proceedings regarding contempt until Karen's apprehension. Furthermore, as a result of the February 4 hearing, Karen's driver's license was ordered suspended by the court, and by a judgment filed on February 13, 1998, Karen was cast in judgment for $3,180 in past-due child support for the arrearage through January 1998.
Following the February 4 proceedings, Karen was arrested at her mother's Arizona residence and returned to Shreveport. Thereafter, on February 27, a second hearing was held on Daryl's rule to consider his remaining charge of contempt. At that hearing, Karen was represented by counsel and evidence was received regarding the circumstances of Karen's delinquency for child support payments from May 1997. At the conclusion, the trial court found that Karen had deliberately violated the court's order for the payment of child support. The court in particular focused on Karen's unjustified failure to pay after August 1997 when she was working at Kroger. However, before imposing a sentence for contempt, the court continued the hearing until April 1998 to allow Karen the opportunity to purge the contempt charge by paying all the child support arrearage.
At the time of the hearing in April 1998, Karen still had not paid in full the child support judgment rendered against her on February 13. Since the February court hearing, she had paid $1045 on the judgment which represented monies she had received primarily from her mother. Karen testified that she had been unable to find employment since the February hearing.
Following the hearing, the trial court again found Karen in contempt of court, reiterating the reasons previously stated at the February ruling. Karen was ordered to serve 20 days in jail. Nevertheless, that sentence was subject to the following:
The sentence imposed above is to be suspended and the following special conditions are ordered:
a. Karen L. Brown Strain is to serve nine (9) consecutive weekends in the Caddo Parish Correction Center from 6:00 p.m. on Friday until 6:00 p.m. on Sunday beginning Friday, April 17, 1998;
b. Karen L. Brown Strain is to remain current as to child support she owes Daryl R. Taylor as it becomes due in the future;
c. Karen L. Brown Strain is to immediately notify Daryl R. Taylor in writing as soon as she becomes employed and provide him with the name, address and phone number of her "employer" or "payor";
d. An immediate wage assignment order shall issue to any such employer or payor who will be utilized to collect the current support obligation owed by Karen L. Brown Strain;
e. Daryl R. Taylor shall have the option to utilize the provisions of LRS 46:236.3 to ask that the maximum allowed under that statute be forwarded to him until the judgment rendered on February 4, 1998 is satisfied;
f. All court costs associated with this proceeding are assessed against Karen L. Brown Strain.
No period of probation was provided by the trial court's order. The trial court's rulings regarding Karen's contempt are the subject of the present writ application.
The original application for review was denied by the Second Circuit Court of Appeal. Karen then sought a review of the denial to the Louisiana Supreme Court. The court granted a writ of review, remanding to this court the matter for argument, briefing and opinion. Brown v. Taylor, 98-CC-2162 (La.11/13/98), 728 So.2d 875.
The assignments of error which Karen raises are summarized as follows:
(1) The trial court erred in finding that Karen intentionally, knowingly, and purposefully refused to make her child support payments so as to amount to a constructive contempt of the court.
(2) The trial court's judgment of contempt and imposition of imprisonment amounted to a criminal contempt conviction and sentence in violation of Karen's *1061 constitutional guarantees required of a criminal proceeding.
(3) The trial court erred in ordering Karen's driver's license surrendered and suspended.
(4) The trial court erred in allowing Daryl to utilize the assignment of income provision of La. R.S. 46:236.3 for the collection of the child support obligation.

Discussion

(1)
Karen first claims that the trial court erred in holding her in contempt for her failure to pay child support. She argues that non-payment alone without considering other factors is not automatically contemptuous and that her inability to pay the child support arrearage was not properly considered by the trial court.
The support obligation imposed on a mother and a father of minor children by Art. 227 is firmly entrenched in our law and is a matter of public policy. State v. Reed, 26,896 (La.App.2d Cir.6/21/95), 658 So.2d 774. Neither equity nor practical inability to pay overrides this policy or allows a parent to avoid paying his or her share of the obligation where the inability arises solely from that parent's own neglect and failure. Id. at 777.
While the enforcement of the personal obligation to pay child support can be pursued through ordinary civil remedies by the parent to whom the obligation is owed, the law also expressly provides that "disobeying an order for the payment of child support" is a specific ground for which a court may hold a delinquent party in contempt of court. La. R.S. 13:4611(1)(d). In such delinquent child support settings, the court must determine that disobedience to the court's order for support is willful or a deliberate refusal by the parent to perform an act which was within the power of the parent to perform. See, La. C.C.P. art. 224(2) and La. R.S. 13:4611(1)(c).
In Fontana v. Fontana, 426 So.2d 351 (La. App. 2d Cir.1983), the former husband claimed as a defense in a contempt hearing that his unemployment rendered him unable to pay his wife alimony. The trial court had rejected that defense and had held the former husband in contempt. In affirming the contempt ruling, this court observed that "as a general rule failure to pay alimony and child support resulting from the obligor's financial inability to pay ... cannot support a contempt charge." Nevertheless, the court made clear that by examination of certain financial and other factors, such as, (1) the capacity of the parent for gainful employment immediately prior to the start of the contempt proceedings, (2) the living conditions and financial circumstances of the parent despite his unemployment, (3) the efforts to pay the delinquent alimony, and (4) proceedings to reduce or terminate the award based upon a change in the circumstances, the trial court can hold the parent in contempt.
Therefore, based upon the above statutes and prior rulings in cases such as Fontana, the trial court was required in this instance to examine the financial circumstances of the offender during the time the arrearage accrued and to review any other circumstances regarding the actions or inactions of the offender for a determination of the offender's deliberate and unjustified refusal to perform the prior order of the court for child support. The trial court's findings on these issues are primarily factual and may not be disturbed absent a determination of manifest error. Fontana, supra at 354.
In the case at hand, Karen claimed that she was unemployed from May until the end of August 1997. When she began working again at Kroger in September, she claimed that she had other work-related expenses such as union dues, uniform costs, and car expenses that prevented her from paying her child support. Karen had no mental or physical condition that prevented her from working and she was living in the home of her present husband's family. She had held several minimum wage jobs in the past and was very capable of working during the summer of 1998. When Karen was asked by the trial court whether there was any reason why she did not send any money to Daryl after August 1997 when she worked *1062 at Kroger, she testified, "I couldn'twell, yeah. I needed the money, number one, but I would have found a way to send him $10, $20, you know, if I'd known it would have got to this point." She admitted that she could have at least made some sort of payment, but chose not to do so. Finally, Karen made no effort to reduce or terminate the award based on a change in circumstances. Therefore, in light of these factors, we conclude that the trial court correctly determined that Karen's failure to pay child support was willful and contemptuous and in violation of the court's judgment.

(2)
In the next assignment of error, Karen asserts that, due to the unconditional sentence imposed upon her, this contempt proceeding must be viewed as a criminal proceeding in which Karen was not afforded the constitutional guarantees required of a criminal proceeding. Karen's argument is based upon the United States Supreme Court ruling in Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), and the fact that she was previously unrepresented by counsel upon the rendition of the initial judgment for support and was not advised of her right against self-incrimination.
In the ruling in Feiock, the United States Supreme Court reviewed a California contempt proceeding in which a parent failed to comply with a valid court order for child support. Under the ruling, the court reaffirmed the distinction between criminal and civil contempt proceedings based upon the type of sentence imposed upon the contemnor. If the sentence allows the release from imprisonment conditioned upon the contemnor's willingness and ability to comply with the previously violated court order, the punishment is coercive and remedial and the proceeding is civil in character. If the sentence is a determinate one, without conditions or a purge clause, the punishment is criminal in nature, and it may not be imposed unless federal constitutional protections are applied in the contempt proceeding. Id., 108 S.Ct. at 1432.
In this case, the eighteen days in jail imposed upon Karen is completely unconditional, and thus properly characterized as punitive and criminal. Finding that the unconditional nature of the penalty requires that this case be viewed as a criminal proceeding, we next consider Karen's claims that her right to remain silent and her right to counsel were violated.
The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and La. Const. art. 1, § 16. At both the February 27 and April 9 proceedings, Karen testified. In neither proceeding was she advised of her right to remain silent, nor did she expressly waive that right. In a criminal proceeding, unless an accused is advised on the record of his privilege against self-incrimination, a waiver cannot be presumed. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971).
The Sixth Amendment, as well as La. Const. art. I, § 13, guarantees the accused in a criminal proceeding the right to assistance of counsel for his defense. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. White, 325 So.2d 584 (La.1976); State v. Carpenter, 390 So.2d 1296 (La.1980). In State v. Creamer, 528 So.2d 667 (La.App.2d Cir.1988), the defendant was found in contempt of court for failing to pay child support. The action brought by the state was viewed as a criminal proceeding. On appeal this court held that the contempt judgment must be set aside because at the time of the initial judgment which imposed the child support obligation, the defendant was unrepresented by counsel. See also, State v. St. Pierre, 515 So.2d 769 (La.1987). In this instance, Karen was likewise unrepresented by counsel at the time of the initial child support judgment. Therefore, no criminal punishment may be imposed upon her in this contempt proceeding for violation of that judgment.
Accordingly, we are constrained to vacate the trial court's imposition of the sentence in this instance and remand for further proceedings *1063 as a civil contempt action consistent with the Feiock ruling and this opinion. On remand, while the trial court's determination of Karen's contemptuous conduct during the time the delinquent arrearage remains valid, the relevant inquiry for the imposition of a sentence will concern Karen's present financial ability and other circumstances which may allow the court to fashion a civil coercive remedy so that any imprisonment pursuant to La. R.S. 13:4611(1)(d) may be conditioned upon Karen's performance of an act which is yet within her ability to perform.

(3)
Karen next argues that the trial court erred in ordering her driver's license surrendered and suspended. Karen again urges, as stated above, that because the trial court erred in finding her in contempt that any condition placed on the judgment would be invalid. Having previously found that Karen was properly held in contempt, we uphold the trial court's application of La. R.S. 9:315.30, et seq. as a coercive and thus civil measure and not as a criminal punishment.
La. R.S. 9:315.30 provides:
The legislature finds and declares that child support is a basic legal right of the state's parents and children, that mothers and fathers have a legal obligation to provide financial support for their children, and that child support payments can have a substantial impact on child poverty and state welfare expenditures. It is therefore the legislature's intent to encourage the payment of child support to decrease overall costs to the state's taxpayers while increasing the amount of financial support collected for the state's children. To this end, the courts of this state are authorized to suspend certain licenses of individuals who are not in compliance with a court order of child support.
Also, the court may suspend a license on its own motion or upon the motion of obligee. La. R.S. 9:315.32. Therefore, is was not necessary for Daryl to make a motion to suspend Karen's driver's license in this instance.
In Richey v. Richey, 97-838 (La.App. 3d Cir.12/10/97), 704 So.2d 343, the Third Circuit Court of Appeal affirmed a trial court's decision to suspend a divorced mother's driver's and nursing license for her failure to pay child support. The court stated,
"Imprisonment for contempt has traditionally been a last resort effort employed by courts to compel compliance with support orders. The legislature has added another last resort measurethe suspension of certain licenses of individuals who are not in compliance. This is not unreasonable. What is unreasonable is for a parent who can pay child support to avoid paying it."
Id. at 345.
Based upon the legislative purpose expressed in La. R.S. 9:315.30, we find that the trial court was well within its discretion to suspend Karen's driver's license for being in contempt of the court's judgment of child support and could do so for an indefinite period of time until compliance with the support order is obtained. See La. R.S. 9:315.31(11) and 9:315.34. Because we find no error in the trial court's judgment of contempt, the court did not err in imposing this coercive measure.

(4)
Karen also argued that the trial court erred in allowing Daryl to utilize the provisions of La. R.S. 46:236.3. The trial court's order regarding the wage assignment was contained in its order quoted above concerning the imposition of Karen's sentence for contempt and not the judgment for past-due child support rendered in February 1998. Since we now vacate that sentence and remand the case to the trial court, Karen may present her arguments concerning La. R.S. 46:236.3 upon remand.

Conclusion
The rulings of the trial court holding Karen Brown Strain in contempt of court and suspending her driver's license pursuant to La. R.S. 9:315.30, et seq. are affirmed. The sentence imposed upon Karen Brown Strain in this civil contempt proceeding is reversed, and the case is remanded for further proceedings in accordance with the above directives for re-sentencing. The costs of appeal are assessed to Karen Brown Strain.
*1064 WRIT GRANTED; JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; AND REMANDED.
HIGHTOWER, J., concurs.