744 So.2d 669 (1999)
Daniel Paul MIDYETT, Plaintiff-Appellant,
v.
Susan Cohn MIDYETT, Defendant-Appellee.
No. 32,208-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*671 Francis M. Gowen, Jr., Shreveport, Counsel for Appellant.
James L. Forston, Counsel for Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
CARAWAY, J.
In this action by the father to enforce visitation rights with his children, the trial court found that no showing was made justifying a contempt of court ruling. The court then imposed an award for attorneys' fees in favor of the mother as the prevailing party under La. R.S. 9:375(B). Affirming the trial court's ruling on the merits, we nevertheless reverse the ruling regarding the award for attorneys' fees.

Facts
Dan Midyett and Susan Midyett were divorced in 1997. Their two children were ages seven and four during the time of this controversy. A judgment awarding joint custody to the parties with Susan as domiciliary parent was entered into on May 15, 1997. Thereafter, the parties had a difficult time agreeing on the terms of a joint custody visitation plan. Dan filed a rule on October 3, 1997 asking the court to set the custody plan. A Joint Custody Implementation Plan ("Custody Plan") was rendered by the court on December 3, 1997, and signed by the judge and the parties on January 5, 1998. The Custody Plan awarded Dan visitation as follows:
(1) Overnight visitation every Friday, beginning when school is dismissed, or 6:00 p.m. until Saturday morning at 9:00 a.m.;
(2) Alternating weekend visitation, beginning on Friday when school is dismissed, or 6:00 p.m., until Monday morning when school resumes, or 8:00 a.m.; and
(3) Visitation for the customary holidays such as Thanksgiving, Christmas, Mother's Day, Father's Day, spring break, and summer vacation.
The Custody Plan also provided for several "Miscellaneous Considerations," such as the requirement that the "children's input and feelings shall be considered when practical."
On June 2, 1998 claiming the denial of access and visitation with his children in violation of the Custody Plan, Dan filed a rule for contempt of court and for attorneys' fees. Dan claimed that he was denied access and/or visitation with his children on the following dates:
d. December 13, 14, 26, 27, 28, 29, 30, and 31 of 1997;
e. January 16, 17, 18, 23, and 30 of 1998 (visitation with son only) and January 31, 1998;

*672 f. February 1, 6, and 13 of 1998 (visitation with son only) and February 14, 15, and 28 of 1998;
g. March 1, 14, 15, and 20 of 1998 (visitation with daughter only) and March 27, 28, and 29 of 1998;
h. April 3, 11, 12, 17, and 24 of 1998;
i. May 9, 15, 16, and 17 of 1998 (visitation with son only) and May 29, 30, and 31 of 1998;
j. June 2, 1998denied telephonic communication with son
Dan additionally alleged that Susan's refusal to allow visitation was "arbitrary, capricious, willful, and without just cause," and he requested an extended visitation with the children to "compensate" him for missed visits.
Susan defended the contempt rule asserting that on the complained of dates, Dan did not visit with the children due to various reasons, such as: (1) the children did not want to go with their father, and Dan did not force them to go; (2) Dan called to see if the children were willing to spend the weekend with him and when they declined, he never went to pick them up; (3) Dan would return the children to Susan before the visit was complete when the children would request to be returned home; or (4) the children would call Susan to pick them up at Dan's home, and when she did, Dan did not object.
Testimony at the contempt hearing was given by Dan and Susan. No other witnesses were called to testify. Apparently, the trial court granted much weight to Susan's testimony and to her stated reasons for the missed visitation. The trial court denied Dan's contempt allegations, denied Dan's request for extended visitation, and pursuant to La. R.S. 9:375(B), awarded attorneys' fees in the amount of $3,208.00 to Susan.
From the court's rulings, Dan assigns as error the denial of the contempt charge and the burden of proof beyond a reasonable doubt imposed upon him by the trial court. Additionally, Dan disputes the judge's conduct during the hearing on his rule for contempt and the award of attorneys' fees to Susan.

Discussion

I.
Dan's proceedings against Susan can be characterized as an action to enforce child visitation rights by supplementation of visitation for the time allegedly denied him and by the imposition of contempt penalties to force Susan's compliance with the Custody Plan. In contrast to a direct contempt which results in punishment primarily to vindicate the dignity of the court, Susan's alleged constructive contempt is punishable primarily to ensure Dan's visitation rights. As such, this is a civil action by a party litigant for the protection of his right to visitation with a civil contempt proceeding incidental thereto. Fontana v. Fontana, 426 So.2d 351 (La. App. 2d Cir.1983), writ denied, 433 So.2d 150 (La.1983). Regardless of Dan's prayer for the imposition of a jail sentence, the prayer need not govern the final judgment[1], which in this case should be fashioned for the purpose of protecting the parent's visitation right which is in the best interest of the children. Any sentence may be crafted as a coercive and remedial civil remedy in conformity with the civil nature of the action. Brown v. Taylor, 31,352 (La.App.2d Cir.2/26/99), 728 So.2d 1058. While a contempt proceeding ancillary to a civil action may assume the quality of a criminal proceeding after a criminal sentence is imposed, Fontana, supra at 351, the trial court is not required to impose criminal punishment in the form of a determinate sentence, without conditions or a purge clause, and may do so only if constitutional protections were afforded the defendant throughout the proceeding. Brown, supra. Therefore, in a civil action *673 to enforce child visitation rights, the trial court has power to fine or imprison the wilful offender up to three months;[2] to fashion a coercive civil remedy with the threat of jail time whether the offender's conduct is clearly shown to be wilful or not;[3] to modify the visitation or possibly modify the custody award;[4] and to award attorneys' fees.[5]
In this case, the trial judge found that Susan was not guilty of violating the Custody Plan, and, therefore, was not in contempt of court. In order for a court to find a person guilty of constructive contempt, it is necessary to find that she violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. La. C.C.P. art. 224(2); Pearson v. Municipal Fire & Police Civil Service Bd. For City of Shreveport, 535 So.2d 515 (La.App. 2d Cir.1988), writ denied, 539 So.2d 634 (La.1989). In making this determination, the trial court is vested with great discretion. Stephens v. Stephens, 30,498 (La.App.2d Cir. 5/13/98), 714 So.2d 115; City of Kenner v. Jumonville, 97,125 (La.App. 5th Cir. 8/27/97), 701 So.2d 223, writ denied, 97-2890 (La.1/30/98), 709 So.2d 718 and cert. denied, ___ U.S. ___, 118 S.Ct. 2371, 141 L.Ed.2d 739 (1998); Reeves v. Thompson, 95-0321 (La.App. 4th Cir. 12/11/96), 685 So.2d 575. The trial court's decision will only be reversed when the appellate court can discern an abuse of that discretion. Stephens, supra; Martin v. Martin, 457 So.2d 189 (La.App. 2d Cir.1984).
Disputing the court's ruling, Dan cites two specific incidents where the evidence of violations were essentially undisputed. According to Dan, Susan took the children to her mother's home in Monroe on Friday, February 6, 1998 in violation of the Custody Plan. Susan acknowledged at the hearing that Dan was to have visitation with the children on February 6, 1998. Dan claims that Susan left a message on his answering machine on February 5, 1998 stating that she was taking the children to Monroe, and that he could visit with the children on February 8 if he left a message on her machine. Dan claims that he did in fact leave a message on Susan's answering machine, but that he never heard back from her. On the other hand, Susan claims that she knew that the children would refuse to spend the entire weekend with Dan, so she took the children to Monroe with her on the Friday (during a scheduled visit with Dan), and intended to give him visitation on Sunday. Whether or not this amounts to an "intentional, knowing, or purposeful" violation for the purpose of imposing contempt penalties on Susan must be left to the trial court's vast discretion. The record does not reveal that the incident amounts to such an egregious violation as to reverse the trial court's abundant discretion.
Next, Dan claims that Susan violated the Custody Plan on May 29-31, 1998. Much testimony was elicited about this missed visitation for Dan's regularly scheduled weekend. Susan testified that the children did not want to go with Dan for the visit. Susan also testified that Dan told her that *674 he would call the police to enforce his rights under the Custody Plan. When Dan was denied his visit on May 29, he turned in a police report. In her testimony, Susan claims that her children were afraid of police officers, and that she took both children to her daughter's T-ball game on that Friday instead of having them available for their visitation with Dan. When Dan arrived to pick up the children, no one was home. This, too, was a violation of the Custody Plan.
After a review of the record and the testimony given by the parties, it is clear that the trial court weighed the testimony carefully and concluded either that Susan did not "willfully" violate the Custody Plan, or that she had a "justifiable excuse" for her actions on the May 29-31, 1998 regularly scheduled visit. The overall dispute concerning this weekend visitation problem, and the many other problem weekends which Dan attempted to prove, was viewed by the trial court as caused by Dan's admitted tolerance of the whims and desires of the young children to stay with their mother or to return prematurely to her during his weekend visitation periods. The trial court concluded that while Susan desired a break from the constant duties pertaining to the children, Dan's inability to deal with the children's emotional outbursts and their reluctance to visit was the primary cause of his lost visitation. Again, the facts leading up to the lost visitation of May 29-31, 1998 do not rise to the level of wilful, contemptuous behavior warranting reversal of the trial court's abundant discretion.
Finally, Dan complains that the trial court's factual determinations on the issue of Susan's contempt were flawed because of the requirement that Dan prove the allegations beyond a reasonable doubt. In its oral ruling, the trial court mistakenly suggested that such burden of proof was applicable in this civil action to enforce child visitation. As stated above, despite Dan's request for the imposition of jail time, this is a civil action with an incidental civil contempt proceeding where the burden of proof for criminal proceedings need not be met. Indeed, it would be contradictory to rule that while a civil litigant has the high burden of proof beyond a reasonable doubt, the trial court after considering the evidence meeting that burden of proof would then have vast discretion to deny a contempt ruling. Nevertheless, the trial court's expressed view of the facts from his weighing of the credibility of both parties' testimony demonstrates that Dan's case against Susan was not strong and by the application of judicial discretion, did not warrant the imposition of contempt penalties.

II.
In another assignment of error concerning the ruling on the merits, Dan contends that the trial court's extensive questioning of him at the close of the contempt hearing was a breach of the court's obligations of fairness and impartiality, thus, depriving him of due process of law. The record indicates that the trial judge asked Dan an extensive number of questions after the close of evidence regarding many of the 39 dates when visitation violations allegedly occurred as noted in Dan's calendar diary.
Under Louisiana Code of Evidence Article 614, a judge may question witnesses. Generally, a trial judge, in order to maintain the impartiality which proper trial technique demands, should be careful not only as to the number and type of questions propounded by him to witnesses, but also as to the manner in which they are propounded. Texas Pacific-Missouri Pacific Terminal R. of New Orleans v. Welsh, 179 F.2d 880 (5th Cir.1950); Patin v. DeStevens, 415 So.2d 1011 (La.App. 4th Cir.1982). In order to adjudicate a matter fairly, the trial court is well within the scope of its duty when it initiates questions from the bench. La. C.C.P. art. 1631; LaPierre v. Gibson, 420 So.2d 990 (La.App. 4th Cir.1982), writ denied, 423 So.2d 1150 (La.1982); Williams v. Western Preferred Casualty Insurance Company, 465 So.2d 191 (La.App. 3d Cir.1985). As *675 noted in a ruling of the Third Circuit, "in a bench trial, as in this one, the dangers inherent in questions from the bench are greatly mitigated because there is no jury to confuse or mislead. The trial judge was merely enabling himself to better understand the crucial testimony of the claimant." Williams, 465 So.2d at 194. Comment (c) to La.Code Evid. art. 614 states, however, that "the power of the court to question witnesses, moreover, does not authorize a court to exercise that power in the same manner as adversary counsel." In other words, the trial judge, while asking a witness questions from the bench, must remain impartial and must not become an "advocate" for one side or the other.
Although the trial court's questioning of Dan was quite involved, somewhat lengthy and arguably unnecessary, we cannot say that the trial judge abused his discretion. As reviewed above, the record supports the ultimate factual conclusion reached by the trial court in measuring the conflict between Dan and Susan and between Dan and the children, and we discern no impartiality by the trial court in reaching its conclusion in this case. Accordingly, this assignment of error is without merit.

III.
Since we have decided that Susan was not in contempt of court for violating the Custody Plan, we must now turn to the issue of the trial court's award of attorneys' fees to her under La. R.S. 9:375(B), which states:
"When the court renders judgment in an action to enforce child visitation rights it shall, except for good cause shown, award attorney's fees and costs to the prevailing party." (Emphasis added).
In the case at bar, Susan's counsel made an oral motion for La. R.S. 9:375(B) attorneys' fees at the close of the contempt hearing after the trial court concluded that she was not in contempt of court. After a separate hearing on the issue of attorneys' fees, at which no further evidence was offered, the trial court awarded Susan $3,208.00 in attorneys' fees, and stated, without further reasoning, "I believe Ms. Midyett should be awarded her attorney's fees in successfully defending the contempt rule. I don't see any good cause shown not to do that." Dan claims that the trial judge erred in finding that he did not have "good cause" to file the motion for contempt against Susan.
In Adkins v. Adkins, 29,088 (La.App.2d Cir.1/31/97), 687 So.2d 1109, one of the few cases awarding attorneys' fees in visitation disputes, a non-domiciliary parent filed a rule for contempt against the domiciliary parent for missed visitation. The trial court found that the defendant was in constructive contempt for violating the visitation order and awarded the non-domiciliary parent attorneys' fees under La. R.S. 9:375(B). On appeal, this court affirmed the attorneys' fee award. In contrast, however, the context in which the moving party was awarded attorneys' fees differs from the posture of this case. In Adkins, the domiciliary/defendant parent was found to be in contempt of court which demonstrated in the ruling on the merits that "good cause" for the defendant's conduct did not exist. This court upheld the trial court's decision on this "good cause" determination. Adkins, supra at 1114.
On the other hand, in this case, since the trial court found that Susan was not in contempt of its ruling, the proper inquiry becomes whether or not Dan had "good cause" to institute the rule for contempt for the protection of his visitation rights. As such, "good cause" under the statute requires a different analysis depending upon which party (i.e., the mover or non-mover) becomes the "prevailing party." We therefore believe that the *676 "good cause" that must be shown under these circumstances is parallel to the proof that evidences a party's good faith in bringing a valid, non-frivolous suit that is not meant to harass or cause unnecessary expense to the other party. Compare, La. C.C.P. art. 863; La. R.S. 9:398.1; La. R.S. 11:264.7(C); La. R.S. 11:3363.1(H)(3); La. R.S. 22:1247(C); La. R.S. 23:1172.2(E)(3); La. R.S. 23:1200.2(C)(3); La. R.S. 37:1287(C) and (F); La. R.S. 37:2666(B); La. R.S. 40:2010.9; La. R.S. 42:11(C); Joyner v. Wear, 27,631 (La.App.2d Cir.12/6/95), 665 So.2d 634, writ denied, 96-0040 and 96-0042 (La. 02/28/96), 668 So.2d 370; and Rauch. v. Rauch, 98,730 (La.App. 5th Cir. 12/16/98), 725 So.2d 558.
Under the circumstances of this case, Dan and Susan had a history of problems with visitation. The children often refused to visit with Dan, and Dan would not "force" them to visit with him. The trial court found that Dan was responsible for most of the problems with visitation due to his inability to deal with the children and rejected Dan's unsubstantiated suspicion that Susan's better relationship with the children was used at times to undermine and discourage his visitation. Nevertheless, as discussed above, Dan presented two clear violations of the Custody Plan, where Susan did not make the children available for his weekend visitation and neglected to communicate with Dan in advance. It also appears from the record that there were serious breakdowns in communication between these parties relating to the facilitation of the father's visitation right.
Therefore, the issue before this court is whether or not the trial court erred in finding that Dan failed to show "good cause" for bringing the contempt rule against Susan. Appellant argues that he brought this rule for contempt in good faith, and that he filed this rule after exhausting all other means (counseling, negotiation, obtaining specific time and dates for access). Nothing in the record leads us to believe that appellant's rule was brought in bad faith or as an attempt to harass the appellee. In fact, the evidence presented regarding the missed visits on February 6, 1998 and May 29-31, 1998 substantiates Dan's "good cause" for filing the action for protection of his visitation rights. Accordingly, to hold Dan liable for attorneys' fees in this case was in error and is hereby reversed.

Conclusion
For these reasons, the judgment of the trial court denying Dan Midyett relief in his action to enforce visitation rights is affirmed and the judgment awarding Susan Midyett attorneys' fees is reversed.
The costs of this appeal shall be borne by the appellant.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] La. C.C.P. art. 862 states that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."
[2] La. R.S. 13:4611(1)(d) and La. C.C.P. art. 224(2).
[3] The issue of criminal punishment for the violation of family law support orders was reviewed by the United States Supreme Court in Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). The award of coercive civil remedies avoids Feiock's constitutional scrutiny attendant to criminal contempt proceedings. Moreover, in these family law settings, a coercive civil remedy may better serve the interest of the aggrieved party and the best interest of the child as opposed to unconditional jail time where earnings for payment of delinquent support payments are lost and parental visitation rights are interrupted.
[4] Since the Civil Code lists as a relevant factor for custody disputes in determining the best interest of the child, "the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party," the detrimental effect of continuous violations of visitation rights could allow the court to reconsider the best interest of the child. La. C.C. art. 134(10).
[5] La. R.S. 9:375(B).