STEWART, J.
| gPlaintiff'-Appellant, Wayne M. Kair-dolf, Jr. (“Wayne”), is appealing a trial court judgment finding him to be voluntarily underemployed. The trial court also found him to be in contempt of court and determined that Defendant-Appellee, Krista Kairdolf (“Krista”), was not voluntarily underemployed. For the reasons stated herein, we affirm.
FACTS
Wayne and Krista were married on December 29, 2001. Two children were born of the marriage. Wayne and Krista physically separated on or about March 17, 2009, and received their judgment of divorce on July 26, 2010. The parties share joint custody of their two children, with Krista designated as the domiciliary parent.
On July 6, 2009, a hearing officer’s conference was held. The hearing officer’s conference report ordered Wayne to pay child support in the amount of $1,400.00 per month, effective April 9, 2009, and payable in two equal installments due on the 15th and 30th of each month. In lieu of paying Krista directly, she also recommended that Wayne continue to pay the mortgage note on the former matrimonial domicile until such time as it sells. The hearing officer also recommended that Wayne pay interim spousal support of $1,000.00 per month, retroactive to the date of the judicial demand, April 9, 2009, and payable in two equal installments due on the 15th and 30th of each month.
On July 27, 2009, the trial judge issued an interim order adopting and implementing the hearing officer’s recommendations.
|sOn August 25, 2009, Wayne lost his job with Fail Telecommunications Corporation (“Fail”), where he was earning $6,666.00 per month. A couple of weeks later, he became employed at Deep South Communications, earning $2,916.00 per month. On September 21, 2009, Wayne filed a motion and rule to suspend and/or terminate spousal support, asserting that he had lost his job at Fail due to no fault of his own. He also asserted that Krista was gainfully employed and requested that his previously fixed child and spousal support payments be suspended and/or reduced and/or terminated due to him losing his job.
On November 13, 2009, Krista filed a rule for contempt and motion for income assignment. In this pleading, she requested that Wayne be held in contempt of court for violating the interim order that provided for the payment of support. Krista also requested back due spousal *530 support judgments with interest, attorney fees, and court cost.
On December 1, 2009, another hearing officer conference was held. The hearing officer found that Wayne was voluntarily underemployed. The hearing officer also found that the appropriate income to be considered for child support purposes would continue to be $6,666.67. Wayne was ordered to pay child support in the amount of $1,490.00 per month effective September 21, 2009, payable in two equal installments due on the 15th and 30th days of each calendar month. Krista’s spousal support was terminated effective September 21, 2009. Child support arrears were fixed at $3,110.00 and spousal support arrears were fixed at $1,667.00. Wayne was found in contempt of court and given 60 days to make his support payments current. The hearing officer also ordered an immediate income assignment.
Wayne and Krista filed objections to the hearing officer’s recommendations. On March 26, 2010, the matter came for hearing before the trial court. The trial court determined that the hearing officer did not err in determining that Wayne was voluntarily underemployed, and that his child support obligation should be based on an average monthly income of $6,666.67. The trial court also determined that the hearing officer correctly fixed arrearages for child support at $3,110.00 and for spousal support at $1,667.00, totaling $4,777.00.
|4Wayne now appeals, asserting five assignments of error.
LAW AND DISCUSSION

Wayne Kairdolfs Voluntary Underemployment/Termination from Fail

In his first assignment of error, Wayne asserts that the trial court erred in determining that he was voluntarily underemployed as a result of his fault or neglect. Wayne contends in his second assignment of error that the trial court erred in determining that there was direct and circumstantial evidence justifying a finding of voluntary underemployment. Due to the fact that these two assignments both relate to Wayne’s termination at Fail and his subsequent alleged voluntary underemployment, we will discuss them together.
Wayne lost his job with Fail on August 25, 2009, where he was earning $6,666.00 per month. Even though Wayne has the proper training and experience in computer engineering, he is currently earning $2,916.00 per month, which is less than one-half of his previous salary. Based on these facts, we can easily ascertain that Wayne is underemployed. We must now address the issue of whether he is voluntarily underemployed.
La. R.S. 9:315(C)(5)(b) provides:
(b.) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.
La. R.S. 9:315.11(A) provides:
A. If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party’s income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey.
Income includes potential income, if a party is voluntarily unemployed or underemployed. La. 9:R.S. 315(C)(5)(b); State v. *531 James 45,955 (La.App. 2 Cir. 1/26/11), 57 So.3d 447.
Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. An involuntary change in | ^circumstances results from fortuitous events or other circumstances beyond a person’s control, such as loss of one’s position or illness. A voluntary change in circumstances generally does not justify a reduction in the support obligation. Jones v. Jones, 44,201 (La.App. 2 Cir. 4/8/09), 6 So.3d 1275; Strange v. Strange, 42,318 (La.App. 2 Cir. 6/20/07), 960 So.2d 1223. Voluntary underemployment is a question of good faith of the obligor spouse. Fuqua v. Fuqua, 45,555 (La.App. 2 Cir. 9/22/10), 47 So.3d 1121; Durfee v. Durfee, 44,281 (La.App. 2 Cir. 5/13/09), 12 So.3d 984.
A determination by the trial court of whether the spouse is in good faith in ending or reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the wide discretion of the trial court. Durfee, supra.; Fuqua, supra. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance of the evidence when, taken as a whole, such proof shows that the fact sought to be proved is more probable than not. Wimberly v. Giglio, 46,000 (La.App. 2 Cir. 1/26/11), 57 So.3d 389.
Wayne believes that the record is absent of any evidence demonstrating that he was terminated from Fail because of pending criminal charges. Further, he believes that the evidence supports the conclusion that he was released from Fail because the corporation was transitioning from microwave transmission to fiber optic transmission, which was an area in which he had no expertise. In support of this assertion, Wayne argues that Floyd Richard Bennett, the “number two man” at Fail, testified that the company was transitioning from microwave transmission to fiber optic transmission. Even though Bennett testified that Wayne did not do anything to cause himself to be fired, he was not aware at the time Wayne’s firing that he had been arrested and was under indictment for embezzlement.
Bennett did testify that Fail was currently transitioning into fiber optic transmission. However, the microwave transmission program was not “scraped” as Wayne alleged. Fail was still using microwave technology more than six months after Wayne was fired from the company. In fact, Bennett testified that Fail is receiving the same services that Wayne | (¡provided during his employment with Fail from an outside vendor. These facts provide a strong indication that Wayne was relieved of his duties at Fail for reasons other than the fact that the company was transitioning from microwave transmission into fiber optic transmission.
Prior to his employment at Fail, Wayne was employed at SkyWriter Communications (“SkyWriter”). Brad Warden, the owner and operator of SkyWriter, testified that Wayne was employed at SkyWriter as the Vice President of Operations for approximately three years with a salary of approximately $65,000.00, plus benefits. Warden further testified that Wayne admitted to him, about 30 to 60 days prior to his termination, that “he had a drug problem and needed to go to rehab.”
After Wayne left SkyWriter to enter the rehabilitation program, Warden conducted an internal investigation at SkyWriter. He testified that he discovered that Wayne had been making fictitious purchases on behalf of SkyWriter from a company called “On the Spot,” when Wayne was actually receiving the proceeds. He also stated he discovered that some of Skywriter’s prod *532 ucts were being sold and that Wayne was receiving the proceeds. Brad further testified that Wayne provided him with a list of personal items that he had used company funds to purchase. Brad turned the results of his investigation over to the Ouachita Parish Sheriffs Office. As a result of the sheriffs office investigation, the Ouachita Parish District Attorney’s office filed formal charges. Wayne is currently charged with felony theft of approximately $280,000.00. At the time' of trial, Brad testified that Wayne had not made any attempt to reimburse him for these unauthorized expenses.
Brad further testified that Fail was a customer of Skywriter at the .time that Wayne was employed with Skywriter. When Brad discovered that Wayne was working for Fail, he urged a Fail representative to conduct a background check on Wayne.
After reviewing the record before us, we can clearly determine that the trial court was presented with sufficient evidence to reasonably determine that Wayne was voluntarily underemployed as a result of his fault or neglect. As a result, the trial court correctly considered his potential income in determining his child support obligation. Further, the trial court 17had sufficient evidence to calculate Wayne’s potential income, since it had evidence of Wayne’s salary from Fail, the testimony regarding Wayne’s earnings and benefits with SkyWriter, and Wayne’s resume. For these reasons, assignments of error one and two are without merit.

Contempt of Court

In the third assignment of error, Wayne argues that the trial court erred in holding him in contempt of court and assessing attorney’s fees against him. The trial court ruled:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff, WAYNE MICHAEL KAIRDOLF, JR., having been found to be in contempt of court, is hereby sentenced to ninety (90) days in the Ouachita Parish jail, consecutive to any other offense, which contempt may be purged by plaintiff, WAYNE MICHAEL KAIRDOLF, JR., paying in full any and all child support and spousal support arrearages within sixty (60) days from the date of this Ruling.
Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes a constructive contempt of court. La. C.C.P. art. 224(2). To find a person guilty of constructive contempt, it is necessary to find the con-temnor violated the order of court intentionally, knowingly, and purposely, without justifiable excuse. Arrington v. Arrington, 41,012 (LaApp. 2 Cir. 4/26/06), 930 So.2d 1068.
The support obligation imposed on a mother and father of minor children by La. C.C. art. 227 is firmly entrenched in our law and is a matter of public policy. Brown v. Taylor, 31,352 (La-App. 2 Cir. 2/26/99), 728 So.2d 1058; State v. Reed, 26,896 (LaApp. 2 Cir. 6/21/95), 658 So.2d 774. Neither equity nor practical inability to pay overrides this policy or allows a parent to avoid paying his or her share of the obligation where the inability arises solely from that parent’s own neglect and failure. Id
While the enforcement of the personal obligation to pay child support can be pursued through ordinary civil remedies by the parent to whom the obligation is owed, the law also expressly provides that “disobeying an order for the payment of child support is a specific ground for which a court may hold a delinquent party in contempt of court”. La. R.S. 13:4611(l)(d). In such delinquent child support settings, *533 the court must determine that disobedience to the court’s order for support is willful or a deliberate refusal |Rby the parent to perform an act which was within the power of the parent to perform. See, La. C.C. art. 224(2) and La. R.S. 13:4611(l)(c).
The general rule regarding the failure to pay child support which results from an obligor’s financial inability to pay was addressed by this court in Fontana v. Fontana, 426 So.2d 351(La.App. 2 Cir. 1983):
As a general rule, failure to pay alimony and child support resulting from the ob-ligor’s financial inability to pay ... cannot support a contempt charge.
This court made clear in Fontana, supra, that by examination of certain financial and other factors, such as, (1) the capacity of the parent for gainful employment immediately prior to the start of the contempt proceedings, (2) the living conditions and financial circumstances of the parent despite his unemployment, (3) the efforts to pay the delinquent alimony, and (4) proceedings to reduce or terminate the award based upon a change in the circumstances, the trial court can hold the parent in contempt.
The trial court noted in its ruling: [Wayne] has failed to pay child support and spousal support in accordance with previous orders of this Court. He has, however, been successful in retaining the services of two of the most respected attorneys in the fields of family and criminal law. Although the Court recognized that [Wayne] is facing serious legal consequences in both criminal and civil court, the Court is of the opinion that child support should take priority over all other matters with the exception of basic needs. By failing to give the Court’s child support orders the appropriate priority, [Wayne] has deliberately and willfully disobeyed the authority of the Court. He is thus in contempt of court.
Wayne chose not to pay in full “any and all child support and spousal support ar-rearages” as ordered by the trial court. Instead, he chose to pay thousands of dollars in attorney fees to fight the payment of child support instead of just paying the amount that was due. Wayne was also paying $500.00 in utilities for his rent home, a clear indication that he was paying for more than basic necessities in his home.
The trial court is vested with great discretion in determining whether a person should be held in contempt for disobeying a court order, and the decision will be reversed only when the appellate court discerns an abuse of discretion. Arring-ton, supra. We find no such abuse of discretion by the |3trial court on the contempt issue in this case. In light of the factors discussed in Fontana, supra, the trial court correctly determined that Wayne’s failure to pay child support in violation of the court’s judgment was willful and without cause. Accordingly, we affirm the trial court’s judgment finding Wayne in contempt of court.

Reduction of Child Support

In the fourth assignment, Wayne alleges that the trial court was clearly wrong in failing to award a reduction of child support from September 21, 2009, the date the motion for relief was filed.
An award of child support may be modified if the circumstances of the child or of either parent materially change and shall be terminated upon proof that it has become unnecessary. La. C.C. art. 142. The party seeking a reduction in child support must show a material change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of *534 the award. La. C.C. art. 142; La. R.S. 9:311.
As determined in assignments of error one and two, the trial court did not err in determining that Wayne was voluntarily underemployed due to his own fault. If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. Voluntary underemployment is a fact-driven consideration. Hernandez v. Hernandez, 2005-1342 (La.App. 1 Cir. 6/9/06), 938 So.2d 1019.
Accordingly, the decision to calculate Wayne’s child support obligations based on his previous employment at Fail was not erroneous.
Since the trial court correctly determined that Wayne was voluntarily underemployed, it was required to calculate his child support payment based on his income earning potential. This assignment of error is meritless.

Krista’s Voluntary Underemployment

In the fifth and final assignment of error, Wayne urges that the trial court erred in failing to find that Krista was voluntarily underemployed.
Krista is employed as a real estate agent. She testified that she has earned approximately $4,800.00 from October 2009 to March 26, 2010, which was the date that the trial took place. Since Wayne arranged for ImKrista to receive additional training as a real estate agent during the marriage, he asserts that this level of earnings suggests that Krista has failed to “maintain employment in accordance with her capabilities.” He suggests that she be assigned a greater salary because her income of $700.00 per month is ample evidence of underemployment. He also asserts that she has chosen to rely on her parents for approximately $2,100.00 per month.
The trial court noted that Krista was just establishing herself in her career and that Wayne could later bring a rule for reduction of support if Krista’s earnings increase in the future. We agree. The record supports the fact that Krista was unemployed during the marriage and had just begun her career in real estate at the time of the hearing. She has not had sufficient time to build a client base and to start reaching her earning potential. For these reasons, we affirm the trial court’s determination that Krista was not voluntarily underemployed.
CONCLUSION
For the reasons stated about, we affirm the rulings of the trial court. Costs of this appeal are assessed against the defendant, Wayne Kairdolf.
AFFIRMED.