611 So.2d 764 (1992)
Sheri BORGOS
v.
Rodney A. BURAS, et al.
No. 92-CA-0105.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1992.
Rehearing Denied February 12, 1993.
*765 Robert F. Fleming, Jr., New Orleans, for appellant.
Roger J. Larue, Jr., and Michael J. Moran, Metairie, for appellee.
Before LOBRANO, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant, Rodney Buras, appeals a twenty thousand dollar ($20,000.00) judgment rendered in favor of plaintiff, Sheri Borgos. Plaintiff answered the appeal seeking an increase in quantam. We affirm.

FACTS:
This case arises out of a car accident on October 13, 1989. On this night the plaintiff, Sheri Borgos, was a passenger in her boyfriend, Toni Bonura's, car which was stopped at a red light on Elysian Fields. Stopped in front of their car was a truck owned and operated by Paul Becnel. While at this light, the plaintiff's vehicle was struck from behind by a car occupied by the defendant, Rodney Buras, and an unknown female. Both Bonura and Becnel testified that they positively saw the defendant exit from the driver's side of the rear-ending car and approach Bonura's car. Becnel and Bonura also testified that the defendant got back into the car and drove *766 it to the side of the road. While waiting for the police to come, the defendant left the scene to make a phone call. At this point, the unknown female in the rear-ending car drove away.
The plaintiff remained in the car complaining of neck pain. An emergency rescue team arrived and because of her complaints of neck pain placed a brace around her and extracted her from the vehicle. The plaintiff was taken to Charity Hospital. Bonura and Becnel testified that after the ambulance left, the defendant entered another car on the corner and left the scene. Bonura reported the incident 6 days later to the Hit and Run division of the New Orleans Police Department. The defendant was contacted by the police soon after Bonura's report and stated that he was not the driver of the car. He stated that he was picked up by a female whom he did not really know and that she drove into Bonura's car. He also states that he remained on the scene until after the ambulance left then walked home.
Prior to trial Dr. Zeringue was deposed on April 9, 1991, nine days before trial. The defendant was not present at the taking of the deposition. Plaintiff's counsel had sent notice of the deposition, via certified mail, on March 11, 1991. This letter, however, was returned April 5, 1991, showing that the defendant had moved. There is nothing in the record which shows that any other attempts to notify the defendant were made.
At trial the defendant represented himself. The deposition was entered into evidence without objection from the defendant. The trial judge held in favor of the plaintiff awarding her $20,000.00. The defendant appeals alleging three errors.
1) The trial judge's holding that the defendant was the driver of the vehicle is against the law and the evidence.
2) The trial judge erred in allowing the deposition of Dr. Zeringue to be introduced into evidence.
3) The trial judge abused her discretion in awarding $20,000.

LIABILITY:
In order to overturn the trial judge's finding that the defendant was, in fact, the driver of the rear-ending vehicle this court must find that the court's determination was clearly erroneous. Rosell v. Esco, 549 So.2d 840 (La.1989). Additionally, the credibility of the witnesses is for the trier of fact to determine. After reading the record, there is nothing which leads to the conclusion that the trial judge was clearly wrong in her finding that the defendant was the rear-ending driver. Both Bonura and Becnel testified positively that they saw the defendant exit the driver's side of the car. While Bonura's testimony could perhaps be seen as self-serving, since the plaintiff was his girlfriend at the time of the accident, there is no reason to believe that Becnel is anything except an impartial witness. Additionally, Becnel and Bonura testified that the defendant drove the rear-ending car to the side of the road. This further supports the conclusion that the defendant was the driver of the vehicle.
The defendant argues that there are inconsistencies in the testimony of Becnel and Bonura but does not specify any inconsistencies which would affect the outcome of the trial. Additionally, the defendant argues on appeal that Bonura and Becnel were not properly cross examined. Therefore, the trial court was not presented with a full picture of the events on the day of the accident.
If the witnesses were not properly crossed examined, it is due to the fact that the defendant chose to represent himself. Second, even if we were to accept the premise that cross examination was insufficient, the defendant, in his brief, does not point to any undiscovered facts that a proper cross examination would have elicited which would have changed the court's holding that the defendant was driving the rear-ending car at the time of the accident. A reading of the trial record shows that the trial court had sufficient evidence on which to base its decision that the defendant was, in fact, the driver of the vehicle that hit Bonura's car. Therefore, without a showing *767 of manifest error, the trial court's finding will not be disturbed on appeal.

INTRODUCTION OF DEPOSITION:
The defendant also argues that the introduction of Dr. Zeringue's deposition into evidence was error because the deposition was taken without the defendant being present and for perpetuation. The defendant argues that counsel for plaintiff did not make a diligent effort, as is required by LSA-C.C.P. art. 1430, to locate him. Defendant contends that plaintiff's counsel knew, at least 4 days prior to the taking of the deposition, that defendant was no longer at the residence to which the certified letter was sent. Plaintiff's counsel alludes to this fact in the preamble of the deposition in which he states that the certified letter came back stamped undeliverable because the defendant had moved. Therefore, defendant argues, plaintiff's counsel should have made a more diligent effort to contact the defendant concerning the deposition. Because a diligent effort was not made to locate the defendant the deposition should not have been allowed into evidence.
The deposition was entered into without objection from the defendant. At trial, the court asked the defendant directly if he had any objections to the medical records or deposition being introduced into evidence. The defendant stated that he had no objection to their introduction. Because a contemporaneous objection was not made at the time of the introduction of the deposition, the objection is waived and cannot be urged on appeal. La.Code Evid. art. 103(A)(1). Additionally, because there was no objection, the records and deposition were properly admitted into evidence.

QUANTUM:
The defendant contends that the trial judge's award of twenty thousand dollars is excessive. The plaintiff argues that the award is inadequate.
Before a damage award may be questioned as inadequate or excessive, the appellate court must look to the individual circumstances of the particular case to determine whether the award for the injuries and their effect on the injured person was a clear abuse of the trier of fact's great discretion. Cooks v. Cornin, 560 So.2d 994 (La.App. 4th Cir.1990); Reck v. Stevens, 373 So.2d 498 (La.1979).
The defendant argues that the plaintiff's injury was a minor "soft tissue" (whiplash type) injury;" that the plaintiff failed to introduce into evidence her hospital records; that she refused to follow her physician's orders to engage in no activity or to travel; that she violated these instructions by engaging in activity and going to Alabama; all of which exacerbated her condition. Furthermore, the only evidence to substantiate her pain and suffering is the self-serving testimony of the plaintiff and her boyfriend Bonura. Additionally, she sustained injuries in a subsequent accident which caused her current condition. For these reasons defendant, the award is excessive.
Ms. Borgos was twenty years old at the time of trial. The record does not reveal any employment at the time of the accident. However, in April of 1990 she began working at a Tastee Doughnuts. As a result of the accident plaintiff remained in the vehicle complaining of pain until the emergency medical unit arrived. She complained of pain and nausea and was placed in a full brace then taken to Charity Hospital. The doctor on duty at Charity Hospital diagnosed her injury as a fractured neck. The Charity Hospital report was introduced at trial in conjunction with the deposition of Dr. Zeringue. This report reflected a diagnosis of a tear drop fracture in the C-4 vertebrae as well as subluxation of the C-3 and C-4 vertebrae. She remained in the hospital for three days and was prescribed a cervical collar to be worn at all times. She remained in this collar for approximately seven months.
Approximately a month after the accident, the plaintiff was re-admitted to Charity Hospital for three days complaining of pain. The report from that hospitalization indicated a diagnosis of a subluxation of the C-4 and C-5 vertebrae. During her stay, the plaintiff underwent a myelogram followed by a CT scan.
*768 Dr. Zeringue, who examined the plaintiff for the first time in January of 1991, diagnosed the plaintiff as suffering from increased space between the C-4, C-5 and C-6 vertebrae and that the plaintiff had lost lordosis of the cervical spine. He concluded that this diagnosis was consistent with the records from Charity Hospital which were made near the time of the accident which he stated was the probable cause of her injuries.
In Ramphrey v. Highlands Insurance Co., 406 So.2d 691 (La.App. 2d Cir.1981) the Second circuit held that $31,000 was an appropriate award for an anterior subluxation and a possible fracture of the C-4 vertebrae. Fontenot v. Boehm, 512 So.2d 1192 (La.App. 1st Cir.1987) the First Circuit allowed an award of $50,000 for a subluxation of the C-4 and C-5 vertebrae. In Bailes v. United States Fidelity and Guaranty Co., 512 So.2d 633 (La.App. 2d Cir.1987) the Second Circuit allowed an award of $75,000 for a fractured second vertebra. In Eck v. O'Flarity, 521 So.2d 459 (La.App. 4th Cir.1988) this court maintained an award of $10,000 for a hairline fracture of the twelfth thoracic vertebra. Because the plaintiff did not introduce her Charity Hospital records into evidence and failed to produce medical testimony that she received any medical treatment beyond the treatment one month after the accident we believe that this case falls within the lower range of compensation for injuries of this type. In view of the great discretion allowed the trier of fact in compensating injuries we find no manifest error in the award. Reck, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).

A JUDGE'S DUTY TO UNREPRESENTED PARTIES:
The defendant, as a defense, raises the long standing legal conundrum of what is the proper role of the trial judge in a non-jury trial when one party is represented by experienced, competent counsel and the other party is unrepresented. Should a trial judge actively participate in the trial and assist the unrepresented litigant in order to render a "just verdict" based on the facts and law?
This dilemma has caused judicial discomfort for lawyers, academics and judges since the creation of the American legal system. The degree of permissible judicial activism has waxed and waned throughout our legal history without a definitive answer at any given time. See Keeton, Judging (West 1990).
In this case the defendant claims that the trial judge should have participated more actively in the trial because he was unrepresented, inexperienced and ill informed about law and procedure while plaintiff's counsel was experienced and knowledgeable. That the trial judge should have questioned witnesses after direct and cross examination because further examination would have revealed that Buras was not the driver of the car. That without an objection from the defendant, the trial judge, on her own motion, should have excluded the deposition of Dr. Zeringue because its admission violated the rules of civil procedure. In other words, it is the role of the trial judge to protect an unrepresented party's legal interests when a patent, procedural or factual, error occurs during a non-jury trial.
Traditionally, the adversary system, which seeks impartiality and fairness, limits the judge's conduct. However, judges must make choices in deciding cases in order to render a final judgment. A judge in a non-jury trial considers competing factual contentions and must correctly choose among the disputed assertions of fact and render a reasoned decision. Judges are not free to make decisions based upon their personal values. A judge's obligation is to impartially apply rules of law to the applicable facts determined by him.
The general conduct of a trial judge in the American legal system has always been controversial. See Fallon, Trial Handbook for Louisiana Lawyers, 2d ed. (1992) Sec. 2:6-2:8. Judicial behavior problems have triggered numerous federal and state procedural reforms. La.Code Civ.Proc. art. 1791; Keeton, Judging (West 1990).
Within the advocacy system, the judge and lawyer have assigned professional roles of responsibility. Every judge is required *769 at some point in their career to reach a decision that is personally offensive to their notion of justice but is required to rule in that manner because of their role in the legal system, defined by law.
In an effort to define, in a non-jury case, the judge's legal role to actively participate in the trial, we hold that there is no affirmative duty to assist an unrepresented party. We note that this holding is subject to the abuse of discretion rule and leaves great range for the exercise of discretion to the trial judge. A trial judge should treat litigants equally. If the court is satisfied with the testimony of witnesses it need not interrogate them further. However, if the facts are confused, undeveloped or misleading the trial judge has the inherent authority, in a non-jury case, to reasonably question the witness for the purpose of clarification only. The scope and limit of this questioning is subject to the abuse of discretion standard.
We also hold that in all matters related to the admissibility of evidence, the court does have an affirmative duty, in a non-jury case, to protect the trial record. A trial judge must adjudicate cases based on evidence in conformity with the Louisiana Code of Evidence and the applicable jurisprudence. An unrepresented party is generally unfamiliar with the rules of evidence and the requirement of a contemporaneous objection. It is therefore the obligation and responsibility of the trial judge to regulate the evidence at trial. Evidence that is patently inadmissible should be automatically excluded by the court without objection. The trial court has the inherent power and legal knowledge to control the admission or exclusion of evidence. However, a complete trial record must be developed and maintained when this type of incident occurs during trial. This principle is consistent with our community standard of justice. It provides a reasonable balance between the parties in an adversary system and allows the court to maintain control of the litigation. These principles apply only when a party is unrepresented and the other party is represented by counsel. We decline to expand these principles to those situations where all parties are represented by counsel. That issue is not before this court.
In this case the trial court did not question any of the witnesses. The record indicates that the defendant fully interrogated all of the witnesses and also testified on direct examination. Appellant fails to demonstrate any testimonial evidence that would contradict the trial judge's factual findings. We find no error in the trial court's ruling or in her trial participation. Nor do we discern any errors in the evidentiary rulings by the court. The deposition, being relevant evidence, was properly admitted. La.Code Civ.Proc. art. 1450. Therefore, this assignment of error is without merit.
Accordingly, the judgment of the trial court is affirmed. All costs of these proceedings are assessed against the appellant.