836 So.2d 417 (2002)
Eric LAPEYROUSE Sr. M/V Miss Georgiana
v.
Joe William BARBAREE M/V Risky Business.
No. 2002 CA 0086.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
*419 Carlton J. Cheramie, Cut Off, Counsel for Defendant/Appellant Joe William Barbaree.
Philip J. McMahon, Houma, Counsel for Plaintiff/Appellee Eric Lapeyrouse, Sr.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In this appeal of an adverse tort judgment, the owner of a shrimping vessel asserts that the trial court erroneously found that there was sufficient evidence to find him liable for the damages sustained by another shrimping vessel. Based on a thorough review of the record, we affirm.

FACTS AND PROCEDURAL HISTORY
In November 1997, the appellee, Eric Lapeyrouse, owned a forty-one foot, wooden shrimp trawling boat named the M/V Miss Georgiana. The appellant, Joe Barbaree, owned a fifty-foot, steel hull shrimp trawling boat called the M/V Risky Business. On November 17, 1997, the M/V Miss Georgiana sustained certain structural damage, though the parties' disagree as to how and to what extent the vessel sustained any damage.
A bench trial was held on April 9, 2001, at the conclusion of which the trial court found in favor of Mr. Lapeyrouse. A written judgment in accordance with the trial court's oral ruling was signed on April 12, 2001. It is from that judgment that Mr. Barbaree appeals, asserting that the trial court erred in: (1) finding that Mr. Lapeyrouse proved his claim by a preponderance of the evidence; (2) allowing certain testimony of Mr. Lapeyrouse's expert witness; (3) examination of Mr. Lapeyrouse as a pro se litigant and the admission of certain evidence in conjunction therewith; and (4) failing to take into account Mr. Lapeyrouse's failure to mitigate damages in the judgment award.

DISCUSSION
In his first assignment of error, Mr. Barbaree alleges that the trial court erroneously found that Mr. Lapeyrouse had proven his claim for damages by a preponderance of the evidence. At the *420 trial on the merits, Mr. Lapeyrouse testified on his own behalf and presented the testimony of three eyewitnesses who stated that the M/V Miss Georgiana was damaged when another vessel's rigging or boom became entangled with the rigging of the M/V Miss Georgiana.
The eyewitnesses testified that they heard a lot of banging and clanking that caused them to observe the entangled vessels, but admitted that they could not see nor identify the name of the vessel that became entangled with the M/V Miss Georgiana. One other witness, Jeffery Scott, testified that he observed the M/V Miss Georgiana tied or moored to the M/V Risky Business on the day of the incident. Mr. Lapeyrouse testified that he observed the accident when it occurred and identified the offending vessel as the M/V Risky Business. Mr. Lapeyrouse also presented the testimony of Robert Hale III, qualified as a marine surveyor expert, who opined that, based on his inspection of the M/V Miss Georgiana following the incident, the damage sustained by the vessel was consistent with the account that the rigging of the vessel had become entangled with that of another vessel.
Conversely, Mr. Barbaree and one witness, a deckhand for the M/V Risky Business, Timothy Kelly, testified that the M/V Risky Business did not damage the M/V Miss Georgiana. Mr. Barbaree and Mr. Kelly both acknowledged that on the date of the incident, the M/V Miss Georgiana was moored to the M/V Risky Business. They further testified that in preparation for sailing that day, they turned the M/V Miss Georgiana around, by virtue of that vessel being moored to the M/V Risky Business, so that it could be moored directly to the Scottco dock and loosed from the M/V Risky Business. Mr. Barbaree and Mr. Kelly then testified that they traveled a short way up the bayou away from the dock to stock up on supplies before launching out to sea.
Mr. Barbaree testified that at no time did the M/V Risky Business become entangled, collide with or otherwise damage the M/V Miss Georgiana. In partial contradiction to Mr. Barbaree's testimony, Mr. Kelly testified that at one point while moving the M/V Miss Georgiana, the "pelican stabilizer" of the M/V Risky Business started to become entangled with the cable of the M/V Miss Georgiana, so he pulled the "pelican stabilizer" down onto the deck. He stated that the contact did not cause any damage to the M/V Miss Georgiana. Mr. Kelly explained that the "pelican stabilizer" was a chain mounted about two and a half feet from the top of the boom.
After considering the above-referenced testimony, the trial court made a factual determination that the M/V Miss Georgiana was damaged by the M/V Risky Business. Factual determinations of the trier of fact may not be reversed absent manifest error or unless they are clearly wrong. Pinsonneault v. Merchants & Farmers Bank & Trust Company, 01-2217, p. 11 (La.4/3/02), 816 So.2d 270, 278. To reverse a factual finding of the trial court, an appellate court must: (1) find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Pinsonneault, 01-2217 at 12, 816 So.2d at 279.
*421 As explained in Short v. Plantation Management Corporation, 99-0899 (La.App. 1st Cir.12/27/00), 781 So.2d 46:
Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact or causation sought to be proved is more probable than not. To carry his burden of proof, the plaintiff must produce evidence from which the factfinder can reasonably conclude that his injuries, more probably than not, were caused by the negligence of the particular defendant. The plaintiff, however, does not have to conclusively exclude all other possible explanations for his injuries, because the standard is not proof beyond a reasonable doubt.
Short, 99-0899 at 9, 781 So.2d at 54 (citation omitted) (emphasis added).
Based on our review of the record, including the testimony presented by both parties, we find no merit in Mr. Barbaree's contention that Mr. Lapeyrouse did not prove his claim for damages by a preponderance of the evidence. Although Mr. Barbaree's evidence substantially contradicted that of Mr. Lapeyrouse, that alone was not sufficient to weigh against finding that the plaintiff proved his case by a preponderance of the evidence. See Short, 99-0899 at 9, 781 So.2d at 54. Mr. Lapeyrouse's testimony, largely corroborated by that of the three eyewitnesses, Mr. Scott, and Mr. Hale, was sufficient to establish by a preponderance of the evidence that the M/V Miss Georgiana was damaged by the operation of the M/V Risky Business on November 17, 1997. Thus, we reject this assignment of error.
In his second assignment of error, Mr. Barbaree contends that the trial court erred in allowing Mr. Hale to testify beyond the stated expertise for which he was qualified. The trial court accepted Mr. Hale as an expert in marine surveying. Mr. Barbaree points out the following testimony in the record wherein he contends that the trial court allowed Mr. Hale to testify as to causation and accident reconstruction, two areas for which he was not qualified to give expert opinion testimony:

BY MR. CHERAMIE:
Q. Mr. Hale, I'm going to show you a photograph which is part of your survey. This first photograph; what does that show?
* * *
A. It shows the bow of the vessel, and it shows where something has ripped some planks out of the deck. And this blackened area here is, generally, what you call the base of the anchor shoot. And this bulwark to the port side is fractured and appears to have been pulled off.
Q. That would be indicative of something hooking onto the front of the vessel and pulling that apart?
A. Most of these vessels, if you look at the second photograph, most of them have a cable or a chain that runs from this part of the A-frame down to this part of the bow (indicating), and it would indicate that something pulled on it and ripped this off.
Q. What's the condition of the wood in that area?
A. It looks like it's got quite a bit of advance rot on it.

THE COURT:
Mr. Hale, you're telling me that whatever force was applied to this vessel came from the rigging?

THE WITNESS:
Yes, sir, that's my opinion; not from a collision with the dock or anything. *422 Counsel for Mr. Barbaree, Mr. Cheramie, did not object to the foregoing exchange between the trial court and Mr. Hale, but simply continued to cross examine the witness.[1]
It is evident from this exchange that the trial court was only seeking a clearer understanding of Mr. Hale's testimony on cross-examination, which is allowed under La. C.E. art. 614. See Billiot v. K-Mart Corporation, 99-1569, p. 7, n. 3 (La.App. 1st Cir.6/23/00), 764 So.2d 329, 333, n. 3, writ denied, 00-2211 (La.10/13/00), 771 So.2d 653. We further note that although La. C.E. art. 614(C) authorizes a party to object to the trial court's questioning of witnesses, counsel for Mr. Barbaree did not object. The failure to object to this testimony thus precludes Mr. Barbaree from raising the issue on appeal. La. C.C.P. art. 1635; La. C.E. art. 103; McMorris v. Marcotte Builders, L.L.C., 98-2302, p. 7 (La.App. 1st Cir.12/28/99), 756 So.2d 424, 429, writ denied, 00-0664 (La.4/20/00), 760 So.2d 1158. We therefore reject this assignment of error.
In his next assignment of error, Mr. Barbaree contests the trial court's actions in conducting a direct examination of Mr. Lapeyrouse when he took the stand to testify on his own behalf. Generally, a trial judge, in order to maintain the impartiality that proper trial technique demands, should be careful not only as to the number and type of questions propounded by him to witnesses, but also as to the manner in which they are propounded. Midyett v. Midyett, 32,208, p. 7 (La.App. 2nd Cir.9/22/99), 744 So.2d 669, 674. However, a layman who represents himself cannot be held to the same standards of skill and judgment that must be attributed to an attorney, although a layman assumes responsibility for his own inadequacy and lack of knowledge of both procedural and substantive law. Rader v. Department of Health and Hospitals, Office of Public Health, Engineering Services, 94-0763, p. 5 (La.App. 1st Cir.3/3/95), 652 So.2d 644, 646.
In this case, before commencing to question Mr. Lapeyrouse, the trial court explained that it was doing so "for the sake of brevity." During the trial court's examination of Mr. Lapeyrouse, some photographs, referred to earlier in the trial by Mr. Lapeyrouse, were filed into the record. Counsel for Mr. Barbaree objected to Mr. Lapeyrouse's attempts to introduce the photographs earlier in the trial based on Mr. Lapeyrouse's failure to properly identify the photographs. Before having the photographs introduced into the record as exhibit "P-3", the trial court asked counsel for Mr. Barbaree whether he had any objections, to which he responded "No. It's proper identification, your Honor." Another set of photographs, identified by Mr. Lapeyrouse as being taken two months before the trial, were also introduced during the trial court's examination of Mr. Lapeyrouse as exhibit "P-5". Again, when counsel for Mr. Barbaree was queried for any objections, his response was "No, your Honor."
The only other evidence introduced during the trial court's cross examination of Mr. Lapeyrouse was Mr. Lapeyrouse's tax return for 1997, which evidence was used by the trial court to determine the merit of Mr. Lapeyrouse's lost income claim. Of particular mention in reviewing the transcript of the trial court's examination of *423 Mr. Lapeyrouse, is the fact that all of the questions posed by the trial court were limited to issues raised earlier in the trial; no new issues were raised.
Although a trial court has no affirmative duty to assist an unrepresented party, it does have authority, in a non-jury case, to reasonably question a witness for clarification when the facts are confused, undeveloped or misleading. Borgos v. Buras, 611 So.2d 764, 769 (La.App. 4th Cir. 1992). Bearing in mind that the trial court's examination of Mr. Lapeyrouse stayed largely within the scope of questions directed to other witnesses by the parties earlier in the trial, we do not find that the trial court abused its discretion by conducting a direct examination of Mr. Lapeyrouse. Especially considering that this matter involved a pro se litigant, in a non-jury trial, where the trial court's questions did not stray outside the scope of questions posed to other witnesses and said questions helped to clarify and develop the issues to be decided by the trial court. See Aycock v. City of Shreveport, 535 So.2d 1006, 1011 (La.App. 2nd Cir. 1988), writ denied, 536 So.2d 1223 (La. 1989); Patin v. DeStevens, 415 So.2d 1011, 1012 (La.App. 4th Cir.1982).
Also, we again note that counsel for Mr. Barbaree did not object to the actions of the trial court, as authorized under La. C.E. art. 614(C), and by such failure, he waives his right to dispute the issue on appeal. See McMorris, 98-2302 at 7, 756 So.2d at 428; Lancon v. Vallot, 459 So.2d 1360, 1365 (La.App. 3rd Cir. 1984). Thus, we reject this assignment of error.
Finally, in his last assignment of error, Mr. Barbaree contends that the trial court failed to take into account Mr. Lapeyrouse's failure to mitigate his damages in rendering the damage award, specifically referring to Mr. Lapeyrouse's failure to salvage the engine and other equipment on the vessel.
At trial, Mr. Hale testified that prior to the accident, the fair market value of the M/V Miss Georgiana was $20,000 and that following the accident, the vessel had a present-day salvage value of $2,000. Mr. Lapeyrouse testified that he purchased the vessel from his father in May 1997 for $15,000. Ronald Lirette, a witness for Mr. Lapeyrouse who testified as to the condition of the vessel prior to the accident, stated that a year or two before Mr. Lapeyrouse purchased the vessel, the previous owner had put a new engine on the vessel worth around five to six thousand dollars and that the vessel had a twin-disc clutch, which he said was "pretty expensive."
The trial court, in awarding Mr. Lapeyrouse $14,000 in damages, considered the testimony of Mr. Hale, stating that the fair market value of the vessel before the accident was $20,000, and also that Mr. Lapeyrouse only paid $15,000 for the vessel. However, it reasoned that "a lot of times daddies do favors for sons[,]" but "you can't buy 41-feet of anything for less than $15,000." Then stating that it was taking "kind of the middle road," the trial court awarded Mr. Lapeyrouse $14,000 in damages.
We note that the trial court seemed to find credible Mr. Hale's testimony that the pre-accident, fair market value of the vessel was $20,000 and that the difference in that value and the damages awarded is $6,000, the approximate value of the vessel's engine as opined by Mr. Lirette. There was no testimony or evidence introduced that indicated the value of vessel's twin-disc clutch, except for Mr. Lirette's opinion that it was "pretty expensive." Considering the evidence in the record and that the trial court did not award damages *424 equal to the full, pre-accident value of the vessel, we cannot say that the trial court abused its discretion in the damages awarded. See Wainwright v. Fontenot, 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74. Thus, we reject Mr. Barbaree's final assignment of error.

CONCLUSION
Accordingly, based on our review of the law and the record in this matter, we find no manifest error on the part of the trial court in ruling in favor Mr. Lapeyrouse on his claim for property damage to his shrimp-trawling vessel, the M/V Miss Georgiana. We, therefore, affirm the judgment of the trial court. All costs in this matter are assessed to the appellant, Mr. Barbaree.
AFFIRMED.
NOTES
[1] We note that at one point during the direct examination of Mr. Hale, counsel for Mr. Barbaree did object to Mr. Hale testifying about issues of causation and accident reconstruction as being beyond the expertise for which he was qualified. The trial court sustained the objection.