## NOT DESIGNATED FOR PUBLICATION

### STATE OF LOUISIANA
### COURT OF APPEAL, THIRD CIRCUIT

**09-961**


**SCOTT MAHFOUZ**

**VERSUS**

**ANGELA S. ANDRIES A/K/A ANGELA HARRISON**


************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 218,834
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.


**AFFIRMED.**

Michael H. Davis
Attorney at Law
Post Office Box 12180
Alexandria, Louisiana  71315-2180
(318) 445-3621
Counsel for Plaintiff/Appellant:
    Scott Mahfouz

Thomas D. Davenport, Jr.
The Davenport Firm
1628 Metro Drive
Alexandria, Louisiana  71301
(318) 445-9696
Counsel for Defendant/Appellee:
    Angela S. Andries a/k/a Angela Harrison

**SULLIVAN, Judge.**

Scott Mahfouz appeals a judgment rendered in this child custody/support matter.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Scott Mahfouz and Angela Andries are the parents of a minor child, Conner Harrison, who was born on April 7, 2004.  On September 7, 2005, following a two-day hearing, judgment was rendered awarding Scott and Angela joint custody of Conner.  Angela was named the domiciliary parent, and Scott was granted visitation pursuant to a schedule outlined in the judgment.  Scott was ordered to pay Angela child support in the amount of $474.74 per month to be divided and paid on the first and fifteenth of each month.  The judgment further provided that Angela and Scott were to fill out all documents necessary to change Conner's name to "Conner Wells Mahfouz" and to indicate that Scott was his birth father.[1]

On July 17, 2006, Scott filed a motion for contempt and for modification of child custody and child support.  He alleged therein that Angela was guilty of failing to comply with the judgment in several respects, including the "Babysitter," "Wardrobe," and "Communication" provisions, as well as the directive regarding Conner's name change.  In addition, he sought to revisit the issue of child support because of a change in his employment.

Angela responded by filing an exception of vagueness and ambiguity, a reconventional demand, a rule to show cause why child support should not be increased, and a motion for contempt.  The basis of the exception was that Scott's

_____

[1]Scott and Angela were never married to each other.  The man listed as Conner's father on his birth certificate is Frankie Layfette Harrison, Jr., who was Angela's husband at the time of Conner's birth.

motion failed to allege any "facts, circumstances or particulars with regard to the child's environment, which would tend to show that modification of custody and visitation is necessary or warranted" nor did the motion "allege how or why the proposed modification would be in the child's best interest." Angela claimed that Scott was delinquent in fulfilling his child support obligation. As a result, she sought a money judgment for the arrearages and requested that Scott be held in contempt. Finally, Angela sought an award of increased child support.

Scott filed three amended rules for contempt and/or modification of custody/visitation between 2007 and 2009. The matter came for hearing on March 2, 2009, following which the trial court issued oral reasons for judgment. A written Judgment on Rule was rendered on April 30, 2009.

Scott now appeals that judgment, assigning the following errors. First, he claims that the trial court erred in modifying the custody judgment resulting in less time for him, as the non-domiciliary parent, where neither party requested such modification. Second, he asserts that the trial court erred in not finding Angela in contempt. Third, he insists that the trial court erred in failing to recalculate child support in accordance with La.R.S. 9:315-315.20. Finally, he complains that the trial court erred in modifying the custody judgment on the basis of evidence that had been excluded as beyond the pleadings.

**DISCUSSION**

Both Scott and Angela agree that the September 7, 2005 judgment is a "considered decree," as that term was used in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986). In *Bergeron*, our supreme court held that:

> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the

2

continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

*Id.* at 1200.

*Did the trial court improperly modify the September 7, 2005 judgment?*

Scott submits that the trial court improperly modified Section "N" (the Babysitter provision) of the judgment, resulting in his being entitled to less time with Conner, despite the fact that neither he nor Angela sought to have the provision modified. He admits that he did place the provision at issue in arguing that Angela was in contempt for failing to abide by it but argues that his having done so should not be interpreted as having enlarged the pleadings so as to permit the trial court's modification of the provision.

Angela submits that the trial court did not modify the Babysitter provision, it merely interpreted the provision so as to prevent Scott from abusing it to the point of absurdity, which it had the power to do under its inherent judicial authority. She argues that Scott was misinterpreting the provision so as to make it apply when she was away from Conner but not when he was away from Conner for the same amount of time. Angela adds that because Scott claimed that she was in contempt for having violated the Babysitter provision, the trial court was required to interpret the provision in order to determine whether Scott's claims had any merit.

The original custody judgment contained the following provision:

N.      Babysitter:    Scott and/or his immediate family shall be given the first option as babysitter whenever Angela requires the child for her other than normal work day daycare, and this shall be uncompensated. In the event that Scott cannot exercise his visitation, Angela would be given the first option of keeping Conner. Further, Angela shall see to it that Scott

and his mother are on the list of people allowed to pick up the child from daycare on the day of Scott's visitation without prior permission.

The judgment rendered on April 30, 2009, provided that:

[I]f either parent, during the time that the respective parent has the physical custody of the child, requires to be gone overnight, away from the child, then, and in that event, the parent who will be gone away from the child is required to notify the other parent so that the other parent can have the first opportunity to have the physical custody of the child during the other parent's temporary absence[.]

We find that the trial court did not improperly modify the Babysitter provision. Instead, it merely offered an expounded interpretation of the provision that comported with the intent and purpose of the September 7, 2005 judgment, as necessitated by Scott's flawed interpretation of the provision as it was originally stated.

*Did the trial court err in not finding Angela in contempt?*

Scott contends that he proved that Angela violated the Babysitter provision of the September 7, 2005 judgment on at least three separate occasions. Angela counters that the trial court interpreted the provision, heard the evidence, and determined that the provision had not been violated.

"Constructive contempt" is defined in La.Code Civ.P. art. 224(2) as an act of "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." The second circuit discussed constructive contempt in *Midyett v. Midyett*, 32,208, pp. 4-5 (La.App. 2 Cir. 9/22/99), 744 So.2d 669, 673 (citations omitted), noting that:

In order for a court to find a person guilty of constructive contempt, it is necessary to find that [they] violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. In making this determination, the trial court is vested with great discretion. The trial court's decision will only be reversed when the appellate court can discern an abuse of that discretion.

4

Scott offered testimony in support of his contention that Angela had violated the Babysitter provision on three separate occasions. On the other hand, while Angela did not specifically deny Scott's allegations, she did supply the trial court with full and complete explanations concerning the times in question. The trial court was satisfied with her explanations and ruled that she was not in contempt. Moreover, the trial court obviously felt compelled to expound on the meaning of the Babysitter provision to prevent future problems with the parties' interpretation of the provision. We find no abuse of discretion in the trial court's decision in this regard.

*Did the trial court err in failing to recalculate child support?*

Scott contends that the trial court erred in failing to recalculate child support, in accordance with the relevant statutory guidelines, when the issue had been squarely placed before it. Angela counters that the trial court had no other option but to leave the previous child support calculation in effect, given Scott's failure to provide specific testimony regarding his income and expenses. She adds that despite the fact that Scott requested that the record be held open for the submission of additional tax documents, he chose to appeal the judgment rather than to submit the documents.

In light of the incomplete record presented to the trial court on the issue of child support and Scott's request to have the record remain open on the issue, we find no error in the trial court's decision that "[c]hild support will be left the same."

*Did the trial court err in modifying the September 7, 2005 judgment on the basis of excluded evidence?*

Scott complains that the trial court improperly modified the original custody judgment when it included a provision in its April 30, 2009 judgment providing that "any medication prescribed for the minor child[] will be controlled by the child's

5

pediatrician or Angela Andries Harrison, as the domiciliary parent." He submits that, because the trial court sustained his objection that Angela was attempting to enlarge the pleadings when she sought to offer testimony regarding her claim that Scott had improperly changed Conner's prescription medication, the trial court erred in addressing the issue of medication. Angela disputes Scott's characterization of the provision as a modification of the original custody judgment. She contends that the provision was merely a recital of the law found in La.R.S. 9:335(B)(3) regarding the authority of a domiciliary parent to "make all decisions affecting the child unless an implementation order provides otherwise."

We note that Angela did raise the issue of Scott "unilaterally chang[ing] [Conner's] medically prescribed medication" and that his "blatant acts intentionally interfer[ed]" with her obligations as the domiciliary parent as stated in the aforementioned statute in her reconventional demand. Moreover, in the context of his objection to Angela's introduction of testimony on the issue of medication, Scott's attorney stated, "I'm sure the court can admonish the parties" about Conner's medications.

Louisiana Revised Statutes 9:335(B)(3) states that: "It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child." We conclude that the trial court did not improperly modify the original custody judgment when it inserted the complained of provision into its April 30, 2009 judgment. The provision consists of a very general statement regarding prescription medication and does nothing more than recite the law with regard to the authority of a domiciliary parent to make decisions affecting the child after a joint custody order had been rendered.

6

## DECREE

For the reasons expressed herein, the April 30, 2009 judgment is affirmed in all respects. All costs of this proceeding are assessed against the appellant, Scott Mahfouz.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.